UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

SHUN WARREN,

        Petitioner,

        v.                                          Case No. 09-C-0919

WILLIAM POLLARD,

        Respondent.

DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DISMISSING CASE

Petitioner, Shun Warren, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on September 23, 2009. Warren filed a motion to amend the record on October 9, 2009. The respondent agrees that Warren has timely filed this petition and that all available state court remedies have been exhausted. After due consideration of the briefs on file the court finds that petitioner is not entitled to relief for the reasons as discussed below.

On April 2, 2003, a judgment of conviction was entered in the Milwaukee County Circuit Court, convicting Warren of first-degree reckless homicide in violation of Wis. Stat. § 940.02(1); party to a crime in violation of Wis. Stat. § 939.05; and use of a dangerous weapon in violation of Wis. Stat. § 939.63. He was sentenced to forty years in the Wisconsin State Prison System, with thirty years or initial confinement followed by ten years of extended supervision. (Doc. 21-14.)

Prior to his conviction and sentencing, Warren entered, and the circuit court accepted, a no contest plea on October 11, 2002. (Doc. 21-11.) On January 23, 2003, Warren sought to withdraw his no contest plea. (Doc. 21-12.) After a hearing, the circuit

court denied Warren's motion on March 20, 2003. (Doc. 21-13 at 9.) Denial of Warren's motion to withdraw his plea is the central matter of this petition for a writ of habeas corpus.

On direct appeal to the Wisconsin Court of Appeals, Warren alleged ineffective assistance of trial counsel and that it was improper for the trial court to deny his motion to withdraw his no contest plea. (Doc. 21-6.) The Wisconsin Court of Appeals affirmed the trial court's judgment of conviction on April 11, 2005, stating that the plea colloquy in the trial court was "more than adequate" to show the voluntary nature of Warren's plea and that "undisputed facts" supported the charge to which Warren pled. (Doc. 21-6 at 5.) Warren then filed a petition for review by the Wisconsin Supreme Court, which was denied on August 25, 2005. (Doc. 21-7.)

Following these events, Warren again moved to withdraw his plea in the trial court on November 20, 2006, pursuant to Wis. Stat. § 974.06, alleging that his trial counsel was ineffective and that his sentence was too harsh because his plea withdrawal motion was held against him. (Doc. 21-1 ¶ 6, Doc. 21-4 at 4.) On February 14, 2007, the circuit court again denied Warren's motion to withdraw his plea. Warren filed another appeal to the Wisconsin Court of Appeals, which affirmed the circuit court's denial of the § 974.06 motion, stating that a large portion of Warren's argument was litigated on direct appeal and that a procedural bar prevented him from asserting the remainder of his argument. (Doc. 21-1.) Again, Warren sought review by the Wisconsin Supreme Court, which was denied on December 14, 2009. (Doc. 21-2.)

Warren raises eight claims in his petition: (1) the trial court committed reversible error in denying the motion to withdraw his plea and should have granted the motion due to his haste and confusion in the matter; (2) the "motion to withdraw the no contest plea

2

for fair and just reason was credible because he made a prompt motion to withdraw"; (3) the court denied the motion to withdraw his plea "on improper grounds"; (4) postconviction and appellate counsel "failed to raise viable issues, [and] instead filed weaker and incomplete issues to withdraw [his] plea"; (5) trial counsel failed to properly inform him of the elements of the crime of which he was charged; (6) trial counsel failed to "properly investigate" a defense of mental disease or defect; (7) "the trial court considered improper and irrelevant information" at sentencing; and (8) the appellate court relied on a procedural bar and thus failed to rule on the merits of the motion to withdraw his plea. (Doc. 1)

For purposes of this decision, the court will reorder and consolidate these claims and discuss each in turn. Essentially, grounds 1 and 7 form colorable constitutional claims of denial of due process; and grounds 4, 5, and 6 form colorable constitutional claims of ineffective assistance of counsel. However, grounds 2, 3, and 8 are not cognizable constitutional claims and will be dismissed.

As an initial matter, the court observes that the respondent failed to respond to grounds 5 through 8 of Warren's petition yet responded to grounds 1 through 4. ( Docs. 21, 24 ¶ 7.) Fortunately for the respondent, his omissions are of no benefit to petitioner, as none of his claims merit habeas relief. For grounds 1 and 3, respondent contends that Warren cannot prove that the trial court acted unreasonably when applying state law. As for ground 4 (and presumably grounds 5 and 6), respondent further contends that Warren procedurally defaulted his ineffectiveness of counsel challenges by not raising them on direct appeal; alternatively, respondent submits that Warren would fail to satisfy the *Strickland v. Washington* principles that would show ineffective assistance of counsel. 466 U.S. 668 (1984).

**I.      Grounds 1, 7: Warren's Due Process Claims**

For Warren to establish that the trial court's denial of his motion to withdraw his plea amounts to a denial of due process, he has to show that the state court came to a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Seventh Circuit has noted that this is a difficult standard for petitioners to meet, stating that "unreasonable means something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation marks omitted).

With ground 1, Warren is essentially claiming that his no contest plea was unknowing, involuntary, or unintelligent. The Seventh Circuit considers a no contest plea under the same standard as a guilty plea; a no contest plea "must be voluntary and intelligent," meaning that a defendant "must have full awareness of the plea's direct consequences, real notice of the true nature of the charge against him, and understand the law in relation to the facts." *Virsnieks v. Smith*, 521 F.3d 707, 714 (7th Cir. 2008) (internal quotation marks omitted). Courts look to "'all of the relevant circumstances surrounding'" the plea to determine if it was knowingly and voluntarily made. *Id*. (quoting *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 1469 (1970)). Here, the circumstances strongly indicate that Warren's plea was indeed knowing, voluntary, and intelligently made. Prior to Warren entering his plea, a scheduling conference was held where he, his trial counsel, and the assistant district attorney discussed resolving this case short of trial. (Doc. 21-10.)

At this conference, Judge John J. DiMotto asked Warren if he understood that resolving the case short of trial would result in the State potentially lowering the charge and Warren giving up; Warren responded in the affirmative. (*Id*. at 4-7.)

Further, Judge Jeffrey A. Conen engaged Warren in an extended, meaningful colloquy during the plea hearing, during which Warren acknowledged signing and understanding the no contest plea questionnaire as well the elements of the crime with which he was charged. (Doc. 21-11 at 6-7.) Judge Conen explained in detail to Warren what rights the no contest plea required him to forfeit, including the right to a jury trial and the right to present defenses. (*Id.* at 7-10.) Warren said that he understood the information contained in the police reports, that most of what was set forth in the criminal complaint actually happened, and that the victim was killed as a result of his reckless actions. (*Id.* at 14-15.)

Thus, the record showed that the trial court ensured that Warren's plea was knowingly made. Even though Warren's trial counsel read the criminal complaint to him (*id*. at 11-12), Warren stated that he understood the nature of the charge against him (*id.* at 12). Additionally, Judge Conen queried Warren's trial counsel about whether she had reviewed the no contest plea questionnaire and waiver of rights with her client and asked whether she was satisfied that petitioner's plea was knowing, voluntary, and intelligent. (*Id.*) Warren's trial counsel replied in the affirmative to both questions. (*Id.* at 16.)

Turning to ground 7, Warren asserts the trial court used his attempt to withdraw his plea against him and imposed a harsher sentence than he would have otherwise received. The court interprets this claim as one of judicial bias and unfairness in sentencing.

"The Due Process Clause guarantees litigants an impartial judge, reflecting the principle that "no man is permitted to try cases where he has an interest in the outcome." *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005) (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). "Where the judge has a direct, personal, substantial, or pecuniary interest, due process is violated." *McCaughtry*, 398 F.3d at 959 (citations omitted). "The general presumption is that judges are honest, upright individuals and thus that they rise above biasing influences." *Id.* The presumption is rebuttable. In order to prove disqualifying bias, "a petitioner must offer either direct evidence or a possible temptation so severe that we might presume an actual, substantial incentive to be biased." *Id.* at 960 (citation omitted). "Absent a 'smoking gun,' a petitioner may rely on circumstantial evidence to prove the necessary bias." *Id.*

Moreover, when it comes to alleged sentencing errors, the Seventh Circuit has stated that "[f]ederal habeas relief is only available to a person in custody in violation of the United States Constitution or laws or treaties of the United States, and is unavailable to remedy errors of state law . . . . Thus, an error in . . . the application of state sentencing rules, does not present a cognizable claim for federal habeas relief." *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

In this case, Warren can neither show a sentencing error by the judge resulting in an unfair sentence nor point the court to any direct or circumstantial evidence in the record establishing a "smoking gun" of judicial bias. Warren was sentenced to forty years, with thirty years of imprisonment followed by ten years of extended supervision. (Doc. 21-14 at 18.) Judge Conen stated that the maximum sentence possible was sixty-five years, with forty-five years of initial confinement followed by twenty years of extended supervision.

6

(Doc. 21-11 at 4.) Warren's sentence is well beneath the maximum penalty that could have been imposed. Therefore, on this record, Warren's unsubstantiated assertions notwithstanding, the claim is baseless.

In light of the foregoing record, petitioner has failed to demonstrate that the state courts unreasonably applied any clearly established federal law or that the state proceedings resulted in an unreasonable determination of the facts in light of the evidence presented to them.

## II.     Grounds 4-6: Warren's Ineffective Assistance of Counsel Claims

Warren makes three claims of ineffective assistance of counsel in grounds 4 through 6. The claims will be assessed in turn. As a general matter, for Warren to show ineffective assistance of counsel, he must prove "deficient performance and prejudice." *Skrzypek v. United States*, 2011 U.S. App. LEXIS 13601, \*6 (7th Cir. June 29, 2011). Specifically, Warren needs to establish "(1) that counsel's performance fell below 'an objective standard of reasonableness,' and (2) a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688, 694). However, there is a "strong presumption" that a counsel's representation was effective. *Skrzypek*, 2011 U.S. App. LEXIS at \*8 (quoting *Bednarski v. United States*, 481 F.3d 530, 535 (7th Cir. 2007)). Warren fails to meet this standard on all of his claims.

Respecting ground 4, Warren contends that his postconviction and appellate counsel failed to raise issues that would have allowed him to withdraw his plea. It is noted that Warren represented himself in the postconviction proceeding, and was represented by counsel on direct appeal. Regardless, the court will analyze ground 4 as asserting

7

ineffective assistance of appellate counsel. That is because 28 U.S.C. § 2254(I) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral postconviction proceedings shall not be a ground for relief in a proceeding under section 2254." Accordingly, "there is generally no constitutional right to effective postconviction counsel" in a proceeding under § 2254. *See Nelson v. Huibregtse*, 2009 U.S. Dist. LEXIS 1863 at *13 n.1 (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). Because ground 4 rests on the performance of postconviction counsel it is barred on § 2254 habeas review.

Next, Warren asserts that his appellate counsel performed ineffectively by failing to challenge his trial counsel's work. In support of this claim, Warren maintains that his trial counsel failed to inform him of witnesses who would assist in defeating his original charge of first-degree intentional homicide.

"Appellate counsel's performance is . . . measured against that of an objectively reasonable attorney." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (citation omitted). "An appellate counsel's performance is deficient if she fails to argue an issue that is both obvious and clearly stronger than the issues raised." *Id.* (citations omitted). "However, counsel is not required to raise every nonfrivolous issue on appeal." *Id.* (citations omitted).

Even assuming that appellate counsel was unreasonable in her decision not to challenge trial counsel's work, Warren fails to show that had trial counsel raised the issue, the outcome of his plea hearing would have been different. Though Warren submits that the witness statements his trial counsel failed to investigate would have led him to not accept a plea and to take the case to trial, the evidence against him was so substantial that it is highly unlikely to have made a difference.

8

The Wisconsin Court of Appeals observed that the record showed that Warren and his victim, Dashan Morrow, "struggled for some reason, Morrow was shot, and Warren left the car with a package of marijuana and did nothing to summon help for Morrow . . . facts, [which] taken together, establish . . . utter disregard for human life." (*See* Doc. 21-1 at 6.) These facts supported the "criminally-reckless conduct element of first-degree reckless homicide." (*Id.*)

Extremely problematic for Warren is the transcript from his plea hearing, in which he said that (1) trial counsel explained all elements of the crime of first-degree reckless homicide to him in detail (Doc. 21-11 at 7), (2) he decided to enter the no contest plea on his own after talking with his trial counsel (id. at 11), (3) he was happy with his trial counsel's representation (*id.*), and (4) the criminal complaint and police reports were read to him and he understood their content (*id*. at 11, 14). Inasmuch as Warren understood fully the factual basis and circumstances surrounding the entry of his no contest plea, as corroborated by the plea hearing colloquy, this court is not persuaded that the result of the appellate proceedings at issue would have been any different. Thus, Warren was not prejudiced by his appellate counsel's presumed tactical decision to not raise the foregoing issues on appeal.

Grounds 5 and 6 remain under the umbrella of ineffective assistance of counsel but involve Warren's trial counsel. In ground 5, Warren contends that his trial counsel did not inform him of the elements of first-degree intentional homicide, the original offense with which he was charged. Particularly, Warren asserts that trial counsel did not advise him of an intent requirement and the effect that a self-defense claim could have on his case.

9

Again, Warren is unable to meet the *Strickland* test because he was not prejudiced. Even if trial counsel failed to inform Warren of the elements of first-degree intentional homicide, an allegation which is at best debatable, he pleaded to the lesser charge of first degree reckless homicide, which does not have a scienter requirement as an element of the offense. As such, his state of mind is irrelevant to the charge he pled no contest to and he cannot demonstrate prejudice.

In essence, Warren secured the benefit of his bargain; he received a lesser charge that carried a lesser penalty in exchange for not putting the State to its burden of proof and saving scarce public resources by not requiring the time and expense of a jury trial. Warren's second trial attorney conceded that whether Warren was planning a robbery or not had "nothing" to do with whether he was actually guilty of first degree reckless homicide, since there was no intent requirement.

Trial counsel assured the court during the plea hearing that self-defense had been considered and counsel commented that the case of *State v. Head*, 2002 WI 99, 648 N.W.2d 413 (explaining what the State had to prove to negate self-defense) had been reviewed by her and Warren. (Doc. 21-11 at 18-19.) Thus, Warren's assertion that he was not informed of the effect of a self-defense claim is not supported by the record.

Ground 6 asserts trial counsel failed to investigate the availability of a mental disease or defect defense for Warren, prior to recommending a plea. Notably, trial counsel obtained approval to hire an expert, Dr. Robert Rawski, to investigate Warren's mental disease or defect after the plea hearing in an effort to mitigate his sentence. (Doc. 21-3 at 54.) Dr. Rawski's report is in the record as part of Exhibit C and is dated January 26, 2003. *(See* Doc. 21-3 at 55.) Dr. Rawski's evaluation resulted in a diagnosis that Warren

suffered from "Major Depression with Psychotic Features" and "Polysubstance Dependence." (*Id.* at 58.) It was Dr. Rawski's professional opinion that Warren be treated prospectively for "a significant mental illness in addition to severe substance abuse problems." (*Id.* at 59.) His report does not address how petitioner's mental illness may have impacted his decision to accept the plea agreement.

The trial court judge mentioned that at the sentencing hearing that he had received Dr. Rawski's psychiatric report, but did not discuss the nature, content, or any effect the report may have had on the sentence he imposed. (Doc. 21-14 at 3.) However, the trial court did remark that Warren had a "twelfth grade reading level," that his letters to the court were "written very well," and that he had "some natural ability." (*Id.* at 15.)

As a threshold matter, Warren cannot show that he was prejudiced by his trial counsel's alleged failure to investigate before recommending a plea. He does not direct the court to anywhere the record supports the claim that his alleged mental disease or defect was made an issue that should have been investigated sooner by trial counsel. Moreover, Warren does not direct the court to anything in the record which establishes that his claimed mental disease or defect affected his conduct at the time of the homicide or compromised his ability to appreciate the nature and extent of the charges and penalties he faced at the plea hearing. Neither does Warren demonstrate how his mental illness may have affected his decision to accept the plea agreement.

On the other hand, the record reflects that Warren's trial counsel sought to have his alleged mental disease or defect investigated by Dr. Rawski, and that Dr. Rawski provided the trial court with a psychiatric report in advance of sentencing. The trial court made perfunctory mention of the report on the record but it does not appear that the court utilized

11

the contents of the report in aggravation or mitigation at sentencing. Hence, the court finds neither deficient performance nor prejudice in trial counsel's performance.

**III.     Grounds 2, 3, and 8: Warren's Non-Cognizable Constitutional Claims**

Grounds 2, 3, and 8 of Warren's petition are not cognizable constitutional claims and must be dismissed. Warren's second ground asks the court to allow him to withdraw his plea because he acted promptly. Matters such as when a state court rules on motions are typically within the inherent discretionary power of courts and, absent a showing of an abuse of that discretion rising to the level of a constitutional denial of due process, this claim is without merit. "Due process does entitle a defendant to a fair trial; but only if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process." *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004).

Here, there was no denial of due process and federal review of the issue is improper. "The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id.* at 511. Thus, the timeliness of a state court acting on a party's motion does not form a colorable constitutional claim on which Warren may obtain federal habeas relief because it "presents no federal issue at all," *see id.*, and is therefore dismissed. *Cf. Martin v. Evans*, 384 F.3d 848, 855 (7th Cir. 2004) ("The trial court's denial of a continuance, however, is a matter of state evidentiary law that does not provide a basis for federal habeas relief.").

As for ground 3, Warren asserts that the court denied his motion to withdraw his no contest plea because his co-defendant could no longer be compelled to testify against him.

Warren contends that he initiated the motion to withdraw his no contest plea prior to his co-defendant's conviction. Warren opines that "[i]f the court would have timely addressed [the] request for plea withdrawal" his co-defendant's conviction would not have been an issue in deciding whether to grant or deny the motion. Thus, it appears that Warren's claim essentially boils down to one of timeliness - - - if the trial court had acted quicker, he may have been allowed to withdraw his plea. As discussed above, the timeliness of the state trial court's ruling is generally not cognizable on federal habeas review. Moreover, the claim is purely speculative, devoid of any merit in the record, and is therefore dismissed.

Ground 8 does not present a colorable constitutional claim and must be dismissed. Warren contends in ground 8 that the appellate court failed to rule on the merits of his motion and relied on a state procedural bar. On habeas review, "a federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)). "[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). The Supreme Court has set forth a "plain statement" rule on procedural default and has held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris*, 489 U.S. at 261-62.

In this case, the Wisconsin Court of Appeals' disposition clearly and expressly relied on a state procedural bar or the fact that Warren's issues were litigated on appeal, citing

13

to the Wisconsin Supreme Court's decisions in *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994), and *Peterson v. State*, 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972). (Doc. 21-1 at 2 ("Because Warren's claims are either procedurally barred by *State v. Escalona-Naranjo* . . . or because they have already been litigated on appeal, *see Peterson v. State* . . . , we affirm.").) Warren sought to raise the issues of ineffective assistance of postconviction and appellate counsel as well as the charge that the trial court used his motion to withdraw his plea against him. (Doc. 21-1 at 4.) The court found that these issues were central to Warren's claims regarding postconviction and appellate counsels' alleged ineffectiveness and that they were litigated during Warren's earlier appeal and, therefore, were barred. *(Id*. at 5.)

Lastly, the court found that on direct appeal Warren failed to raise the argument that he received a harsher sentence because he sought to withdraw his no contest plea. (*Id*. at 7.) Inasmuch as Warren could have raised that issue on direct appeal, the court found it too was barred. *Id*. This determination by the Wisconsin Court of Appeals rests on an independent and adequate state law ground and provides no basis for federal habeas relief. Therefore,

IT IS ORDERED that Warren's petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that this case be dismissed.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE

14